JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Larry Gilbert appeals from his convictions and sentences for felonious assault with firearms specifications. The attorney originally assigned to represent appellant in this matter raised two assignments of error. First, he urged that the court abused its discretion by denying appellant's motion to withdraw his guilty plea. Second, he claimed the court erred by ordering that appellant's sentences would be served consecutively without making appropriate findings.
 {¶ 2} After appellant's assigned counsel was given leave to withdraw, this court granted his newly assigned attorney leave to file additional assignments of error. Appellant's supplemental brief filed November 5, 2007 raises four additional issues: (1) whether the trial court erred by failing to adequately inquire into appellant's request to discharge his court-appointed attorney; (2) whether the court abused its discretion by denying the motion to discharge his court-appointed counsel; (3) whether the trial court erred by accepting guilty pleas which were not voluntary; and (4) whether appellant was denied the effective assistance of counsel in the trial court. We affirm.
 Procedural History {¶ 3} In an indictment filed December 9, 2005 in Cuyahoga County Common Pleas Court Case No. 474510, appellant was charged with two counts of felonious assault, each of which carried one-and three-year firearms specifications. A second *Page 4 
indictment was filed against appellant and two co-defendants on March 31, 2006 in Case No. 479137, again charging appellant with felonious assault with one-and three-year firearms specifications.[1] Appellant pleaded not guilty to each of these charges.
 {¶ 4} Case No. 474510 was scheduled for trial on the morning of June 6, 2006. As they waited for a jury, the court noted on the record that appellant's counsel had indicated to the court that appellant was "having issues" with the attorney, and while the court did not know exactly what the issues were about, it was unlikely to dismiss counsel and delay the trial. Although appellant complained that he had been unable to talk to his attorney at any of the pretrials, the court pointed out that appellant could have called or visited the attorney's office. The court then asked counsel to continue in plea discussions before the jury was called.
 {¶ 5} Later that day, the court held a change-of-plea hearing. At the hearing, the state expressed its understanding that the appellant wished to withdraw his not guilty plea in Case No. 474510 and enter a plea of guilty to the first count of felonious assault and to the attached three-year firearms specification. The state further expressed its understanding that appellant wished to withdraw his not guilty plea in Case No. 479137 and enter a guilty plea to felonious assault and a one-year firearms specification. In addition, the appellant agreed that he would give a *Page 5 
truthful written statement and testify truthfully against his two co-defendants in Case No. 479137. The state further noted that the appellant agreed that the sentences in these two cases would be consecutive, and explained:
 "Therefore, this defendant is agreeing that there is a minimum five years in prison in 474510 and a minimum three years in prison on 479137.
 "The maximum in 474510 would be 11 years. The maximum is in 479137 is nine years. These are consecutive in nature."
 {¶ 6} The court addressed appellant. Appellant informed the court that he was 22 years old, had completed 12th grade in school and could read and write. He was not under the influence of any medication, drugs or alcohol. The court ensured that appellant understood that if he failed to cooperate as required by his plea agreement, the state could withdraw the pleas and proceed to trial in both cases. The court then explained the sentence that could be imposed upon appellant that if he pleaded guilty to one count of felonious assault with a three-year firearms specification in Case No. 474510:
 "Sir, that would carry with it a possible term of incarceration of two to eight years on a felony of the second degree in addition to the three year gun spec. The gun spec has to be run consecutive to any time; do you understand that?
 "THE DEFENDANT: Somewhat, sir. What does consecutive mean?
 "THE COURT: If a minimum sentence was imposed on the felony of the second degree of two years, there is an automatic gun spec that has to run consecutive, meaning they run — they don't run on top of each other. They are next to each other.
 "You have to serve three years of the gun spec and then two. So that is what Mr. Filiatraut [the prosecutor] said, the minimum sentence is five years. *Page 6 
 "Go to the opposite end. If I gave you an eight year sentence and you had a three year gun spec, the total amount of time would be?
 "THE DEFENDANT: 11.
 "THE COURT: Yes.
 "THE DEFENDANT: Thank you."
The court also informed the appellant that the one-year firearm specification on the charge to which he pleaded guilty and the second count of felonious assault and its associated firearms specifications would be dismissed.
 {¶ 7} The court then proceeded to explain the sentence that could be imposed in Case No. 479137:
 "THE COURT: On Case 479137 the State of Ohio is proposing that you plead to Count One as amended by deleting the three year firearm spec, which would mean there is a one year firearm spec that remains.
 "Again, looking at two to eight years possible term of incarceration and $15,000.00 fine and with one year that will be run consecutive; do you understand that?
 "THE DEFENDANT: Yes, sir.
 "THE COURT: Let me tell you the maximum sentence. The State of Ohio put that on the record, but I have to advise you.
 "On the first case, 474510, you are looking at eight years plus three. We just discussed that. It totals out to be 11 years maximum on that case; do you understand that?
 "THE DEFENDANT: Yes.
 "THE COURT: If I ran it consecutive to 479137, the maximum time on 479137 is eight years plus one, nine years. So it's a total of 20 years.
 "You can look at consecutive sentences that could be given to you on this case; do you understand that?
 "THE DEFENDANT: Yes sir. My lawyer advised me of that." *Page 7 
 {¶ 8} The court concluded that appellant was informed of his constitutional rights; understood the nature of the charges, the effect of his plea and the maximum penalties; and his plea was knowing, intelligent and voluntary.
 {¶ 9} On July 28, 2006, appellant filed a motion to withdraw his guilty pleas in both cases. In these motions, he asserted that he did not "fully comprehend" the effect of consecutive sentences, and believed that he would prevail at trial. After this motion was filed, appellant retained new counsel and his assigned attorney was removed. The court then conducted a hearing on appellant's motion after which it denied the motion.
 {¶ 10} On September 1, 2006, the court sentenced appellant in Case No. 474510 to three years' imprisonment on the firearms specification to be served prior and consecutive to a sentence of five years' imprisonment on the base charge. The court further ordered that the sentence in this case was to be served consecutively to the sentence imposed in Case No. 479137. In Case No. 479137, the court sentenced appellant to a term of one year's imprisonment on the firearm specification to be served prior and consecutive to a sentence of five years' imprisonment on the base charge. The court also ordered that the sentence in this case would be served consecutively to the sentence imposed in Case No. 474510.
 Law and Analysis {¶ 11} In his first assignment of error, appellant contends that the common pleas court abused its discretion by denying his motion to withdraw his guilty plea. *Page 8 
While Crim.R. 32.1 motions which are filed before sentencing generally will be freely allowed, "a defendant does not have an absolute right to withdraw a plea prior to sentencing." State v. Xie (1992),62 Ohio St.3d 521, 527. "Therefore, the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." Id. In this case, the court did conduct a hearing. Both in his motion and at the hearing, appellant asserted that he did not understand the concept of consecutive sentences. However, the colloquy at the plea hearing, quoted above, plainly shows that the court explained the concept of consecutive sentences to appellant and appellant demonstrated his understanding of the concept as well as his understanding of the potential sentences he faced. The common pleas court did not abuse its discretion by denying appellant's motion to withdraw his guilty plea on this basis. Accordingly, we overrule the first assignment of error.
 {¶ 12} Second, appellant claims the court erred by imposing consecutive sentences without making the findings required by R.C.2929.14(E)(4). The plea agreement and sentences in these cases were both entered after the Supreme Court's decision in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856. Foster held that R.C. 2929.14(E)(4) was unconstitutional because it required judicial findings of fact not proven to a jury beyond a reasonable doubt or admitted by the defendant before the court could impose consecutive sentences. The court concluded that this statute was capable of being severed, and that after severance, judicial factfindings *Page 9 
were not required before the court could impose consecutive terms of imprisonment. Thus, the law in effect at the time of the plea and the sentencing did not require the court to make any findings before it could impose consecutive sentences.
 {¶ 13} In any event, as appellant himself recognizes, he agreed to the imposition of consecutive sentences as part of his plea agreement. Even if the court was required to make findings before imposing consecutive sentences, the plea agreement effectively waived this requirement. Cf.State v. Seals, Cuyahoga App. No. 88047, 2007-Ohio-819. Therefore, we overrule the second assigned error.
 {¶ 14} Appellant's third and fourth assignments of error raise closely related issues. In his third assignment of error, appellant contends the court failed to make adequate inquiry into his request to discharge his attorney before he entered his pleas. The fourth assignment of error claims the court erred by denying his request to discharge counsel. Appellant waived these alleged errors when he pleaded guilty.
 {¶ 15} "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann *Page 10 
[v. Richardson (1970), 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763]."Tollett v. Henderson (1973), 411 U.S. 258, 267. Thus, "the crucial inquiry in the instant cause becomes whether defendant's plea of guilty constituted a knowing, intelligent and voluntary waiver of his right to" the effective assistance of counsel earlier in the proceedings.State v. Spates (1992), 64 Ohio St.3d 269, 272.
 {¶ 16} At the plea hearing, appellant specifically stated that he was satisfied with his attorney's representation. The trial court meticulously complied with the requirements of Crim.R. 11(C), and expressly determined that "this Court is satisfied that you've been informed of your Constitutional rights and that you understand the nature of the charges, the amendments that the State of Ohio placed on the record, the effect of your plea and the maximum penalties that I could impose. I'm also going to find, Mr. Gilbert, that your plea is being made knowingly, intelligently and voluntarily here this afternoon." Accordingly, we find appellant waived any error in the court's disposition of his request to discharge counsel.
 {¶ 17} Moreover, appellant never expressly asked the court to discharge his attorney and appoint new counsel. The trial court did not err by failing to inquire into or grant a request that was not made.
 {¶ 18} Appellant's fifth assignment of error claims the court erred by accepting a guilty plea which was not voluntary. He suggests that his pleas were coerced, and that the court did not adequately inquire whether the pleas were voluntary. In support of his contention that the pleas were coerced, appellant claims the court's *Page 11 
denial of his request to discharge his appointed attorney left him "saddled with counsel who was unwanted, unprepared, and uninterested. Trial with such representation was not an option." This argument implies that appellant's plea was coerced because his attorney was not ready or willing to proceed to trial, yet the court would not allow him to discharge counsel. Dramatic though these arguments sound, however, none of these assertions is supported by the record. As noted above, appellant never expressly asked the court to discharge his attorney, and only obliquely raised the matter on the day of trial by having his attorney inform the court that he had "issues" with counsel. There is no evidence counsel was unprepared to go to trial, or that he was "uninterested." Furthermore, appellant said that he was satisfied with his attorney's representation at the plea hearing. Accordingly, we find appellant has not supported his contention that his plea was coerced because he was being forced to go to trial with an attorney who was unprepared.
 {¶ 19} The trial court specifically asked appellant whether there had been any threats or promises made to him, or inducements for him to change his plea, and appellant said no. The court expressly found that appellant's plea was voluntary. The mere fact that the court did not specifically ask whether he was coerced does not undermine the court's finding that the plea was voluntary. Therefore, we overrule the fifth assignment of error.
 {¶ 20} Finally, appellant argues that he did not receive effective assistance of counsel on his motion to withdraw his guilty plea. He contends that the assigned *Page 12 
attorney who filed his motion had a "conflict of interest" because the attorney had a personal reason not to pursue one of the primary reasons for the motion to withdraw, i.e., "the discord between Appellant and his court-appointed counsel and the allegations regarding his lack of interest and his lack of preparation."[2] He contends that he was prejudiced because the court limited him to the arguments raised in the written motion filed by the assigned attorney, whom he discharged.
 {¶ 21} As noted above, appellant cannot demonstrate these contentions on the record; his arguments necessarily rely on evidence outside the record about his conversations with counsel and counsel's preparation. Therefore, he cannot pursue these arguments on direct appeal. See, e.g.,State v. Scott-Hoover, Crawford App. No. 3-04-11, 2004-Ohio-4804, [18.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to *Page 13 
Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, JUDGE
FRANK D. CELEBREZZE, P.J., and SEAN C. GALLAGHER, J., CONCUR
[1] This indictment also contained two additional charges against one of the co-defendants.
[2] Apparently, appellant would have claimed that he should be allowed to withdraw his plea because he had felt compelled to plead because his attorney was unprepared. *Page 1